```
 1                    UNITED STATES DISTRICT COURT
                        DISTRICT OF MASSACHUSETTS
 2
      * * * * * * * * * * * * * * *
 3    UNITED STATES OF AMERICA     *
                                   *
 4              vs.                *      CIVIL ACTION
                                   *      No. 04-10375-JLT
 5    GLAXOSMITHKLINE              *
      HOLDINGS (AMERICAS) INC.,    *
 6    et al                        *
                                   *
 7    * * * * * * * * * * * * * * *

 8            BEFORE THE HONORABLE JOSEPH L. TAURO
                  UNITED STATES DISTRICT JUDGE
 9                      STATUS CONFERENCE

10    A P P E A R A N C E S

11            OFFICE OF THE UNITED STATES ATTORNEY
              1 Courthouse Way, Suite 9200
12            Boston, Massachusetts 02210
              for the United States
13            By:  Sara M. Bloom, AUSA
                   Shannon Kelley, AUSA
14
              GETNICK & GETNICK
15            Rockefeller Center
              620 Fifth Avenue
16            New York, New York 10020-2457
              for the relator Cheryl D. Eckard
17            By:  Neil V. Getnick, Esq.
                   Lesley A. Skillen, Esq.
18

19
                                        Courtroom No. 22
20                                      John J. Moakley Courthouse
                                        1 Courthouse Way
21                                      Boston, Massachusetts 02210
                                        June 9, 2008
22                                      2:30 p.m.

23

24

25
```

```
 1   APPEARNCES, CONTINUED

 2


 3
             TUCKER, HEIFETZ & SALTZMAN, LLP
 4           100 Franklin Street, Suite 801
             Boston, Massachusetts 02110
 5           for the relator Cheryl D. Eckard
             By: Scott J. Tucker, Esq.
 6

 7

 8

 9
             COVINGTON & BURLING
10           1201 Pennsylvania Avenue, NW
             Washington, D.C. 20004-2401
11           for the defendants
             By: Geoffrey E. Hobart, Esq.
12               Matthew J. O'Connor, Esq.

13

14

15

16

17

18

19

20

21
                   CAROL LYNN SCOTT, CSR, RMR
22                    Official Court Reporter
                 One Courthouse Way, Suite 7204
23                  Boston, Massachusetts 02210
                         (617) 330-1377
24

25
```

```
 1                    P R O C E E D I N G S
 2           THE CLERK:  All rise for the Honorable Court.
 3           THE COURT:  Good afternoon everybody.
 4           COUNSEL:  Good afternoon.
 5           THE CLERK:  This is Civil Action No. 04-10375,
 6   United States of America versus GlaxoSmithKline.
 7           Counsel please identify themselves for the record.
 8           MR. GETNICK:  Neil Getnick, Getnick & Getnick, for
 9   the relator Cheryl Eckard.
10           THE COURT:  Okay.
11           MR. HOBART:  Geoffrey Hobart and Matthew O'Connor
12   for the defendants, Your Honor.
13           THE COURT:  Okay.
14           MS. KELLEY:  Shannon Kelley and Sara Bloom for the
15   United States, Your Honor.
16           THE COURT:  Okay.  Now, what are we going to do
17   with this case?  It is a 2004 case.  It is not going to get
18   any younger.  It is not going to go away without some
19   activity.
20           One thing I was thinking of doing as I was walking
21   here just about to enter into my "shazam room" here
22   (indicating) where I go "shazam" and then I put on my
23   robe -- for those of you who are too young, I think it was
24   Captain Marvel.
25           (Laughter.)
```

1       **THE COURT:**  I will just give you a trial day three
2   or four months from now and not even make a laissez-faire
3   approach to discovery, which is not what I usually do.  Let
4   you do whatever you want for the next three or four months
5   and then you pick a jury four months from now.
6       I mean, can you think of anything else I can do?
7   Otherwise you are going to be telling me what a big case it
8   is and what a big investment.  The government is out of it
9   now; right?  Because the government is now an interested
10  observer essentially.
11      **MS. BLOOM:**  I think where the government is is we
12  have not intervened at this point so we are not presently a
13  party.
14      I don't think that -- I think the government has
15  indicated that it has significant interests in this
16  investigation but we are not at a point because of the
17  ongoing criminal investigation that we are prepared to seek
18  to intervene.
19      **THE COURT:**  So I have got a traditional case,
20  plaintiff/defendant case.  And why not just put it on a
21  track to be tried?
22      **MR. GETNICK:**  I don't think we are quite at that
23  stage.  But I do believe that the case is moving forward
24  through litigation process.  And I'd like to make a
25  recommendation of how I think we can do that expeditiously.

```
 1              THE COURT:  All right.  Have I sent out a Rule 26
 2   in this case?  Zita?
 3              THE CLERK:  I'm not sure, Judge.
 4              MR. HOBART:  I don't believe so.
 5              THE COURT:  Have we ever had --
 6              THE CLERK:  No, they were working on their motion
 7   to dismiss.
 8              THE COURT:  You are working on a motion to dismiss
 9   or something?
10              MR. GETNICK:  There was a motion to dismiss that
11   was drafted by the defendant GlaxoSmithKline and Roche.  It
12   has been provided to the relator.  And we are coming before
13   the Court because we believe that there is a number of ways
14   to narrow that significantly and sharpen it so that we can
15   get to the meat of this matter much more quickly.
16              THE COURT:  What about discovery?  Do you need any
17   discovery in this case?
18              MR. GETNICK:  We will need discovery in the case.
19              THE COURT:  Do you know who you want to depose?  We
20   are not going to have any interrogatories.  Do you know what
21   your list of depositions would be?
22              MR. GETNICK:  The answer to that question is yes.
23   I don't know whether that is going to be straightforward or
24   not.  From the relator's perspective, if, in fact, we can
25   have substantive depositions, we're all in favor of that.
```

1           I anticipate that if we notice such depositions, we
2   are going to face motions from both the defendant as well as
3   from the government under the False Claims Act saying that
4   there is going to be a motion for a stay of those particular
5   depositions given the pending criminal investigation.
6           So from our standpoint if the only purpose of the
7   deposition is going to be to have someone sit down and
8   elicit the Fifth Amendment, we would be less likely to push
9   that deposition.  If we're, in fact, in a position to be
10  able to have someone sit down and answer questions
11  substantively, we certainly would want to do that.
12          **THE COURT:**  Well, let's go back to where we
13  started.  What about this motion to dismiss that you are
14  going to get together and narrow the issue down?  Is that
15  realistic or is this something you are talking about for
16  three or four months from now?
17          And I don't mean to sound sarcastic when I say
18  that.
19          **MR. GETNICK:**  No, it is kind of realistic.  In
20  fact, it's --
21          **THE COURT:**  What --
22          **MR. GETNICK:**  There has been a motion drafted.  We
23  have that motion.  We have sat and we've looked at it.
24          The branches of the motion deal with jurisdiction.
25  They deal with the claims from the standpoint of a release.

1  And they also deal with the claims from the standpoint of
2  specificity.
3      We have already begun a discussion with both Glaxo
4  and Roche which, as I would describe it, is robust. It's
5  productive. They recently within the last two weeks
6  provided us with an agreement which purportedly according to
7  the defendants creates an indemnity situation by which Glaxo
8  is indemnifying Roche. And they have asked us to consider
9  dismissing Roche out of the case. We are looking at that.
10 We are analyzing that. We are considering that, although
11 for tactical reasons we might not wish to do that.
12     They have also asked us to look at the retaliation
13 claims and to consider paring down those claims. Likewise
14 we are looking at that.
15     On the other hand, we believe that when we put
16 certain facts before them, they will ultimately agree that
17 the jurisdictional argument that they're making is one that
18 can be put to the side based on the role that the relator
19 played in this case in triggering the government's interest.
20     We believe that the government will be able to back
21 that up and so as a result a very major branch of that
22 motion may fall to the side.
23     There is a theory in this case by which it would
24 not be necessary to specify individual claims. On the other
25 hand, we are in a position to do so. They're not currently

1  in our complaint.
2         One of the thought processes we had, and, in fact,
3  it was suggested to us by the defense, is to agree to amend
4  the complaint to add that additional specificity so the
5  argument becomes moot.  And we are in a position potentially
6  to do that as well.
7         Finally, with respect to the 12(b)(6) motion, there
8  is two aspects of the release argument that they're making
9  and one that we are studying in particular that might cause
10 for a narrowing.  So there is a potential narrowing of the
11 defendants, a potential narrowing of the claims, and
12 potential withdrawal or modification, paring down of the
13 three branches of the motion.
14        That can result in one of three things.  It can
15 mean there will not be a motion to dismiss.  It can mean
16 there will be a complaint which we will move to present to
17 the Court on consent with the defendant and with the assent
18 of the government.
19        And if there is anything remaining of that motion,
20 it could be a far pared-down motion than it is today.
21        One of the things that we are concerned about in
22 this case is that we have been successful to date in trying
23 this case within the confines of this courtroom.  None of
24 us -- I am speaking for the relator as well as I think the
25 defendant and the government -- are looking to try this case

1  in the press.  None of us are looking to stir up collateral
2  interests in the various class actions cases that have
3  overlap.  And none of us are looking to have a situation
4  where various state entities that have an interest in this
5  case somehow begin collateral activities that in some way
6  get in the way of a smooth transition.
7       So if, in fact, we are going to narrow defendants,
8  one of the things we will need to do is we will need to come
9  back to the government, even though they have declined from
10 the standpoint of approving that, and we will look to the
11 government to deal with the National Medicaid Fraud Control
12 Unit which will be a single unit representing the states as
13 opposed to having to open up a Pandora's box of seventeen
14 different state entities suddenly weighing in on this
15 process.
16      One of the benefits of being able to do this having
17 had the motion provided to us as opposed to having been
18 served is that a lot of these collateral consequences have
19 been avoided.
20      So ideally what we would like to do is the
21 following:
22      To adjourn this case, to adjourn it till mid
23 September.  And within that period of time to be able to
24 come back to you at that time and say here are the four
25 corners of the case.  And I believe that we will have

```
 1   substantial progress in terms of narrowing the case along
 2   the lines I have said to you, possibly eliminating the
 3   motion to dismiss.  If not, having a very pared-down motion
 4   accompanied by, if necessary, an amended complaint which
 5   will come on the consent of all the parties.
 6           THE COURT:  I had two questions at once so they got
 7   mixed up in my brain.
 8           What happens if you don't accomplish anything?
 9           MR. GETNICK:  I think it is very doubtful.  If we
10   don't accomplish anything, they'll file their motion.
11           But one of the problems is, associated with that,
12   because it is a jurisdictional motion, then we will be in a
13   situation where we have to take discovery with respect to
14   aspects of what they're claiming by way of their
15   jurisdictional bar.
16           They're claiming that this is the result of a
17   public disclosure.  That is how the relator became aware of
18   it.  We are saying that's not at all the case.  And if you
19   don't believe us, speak to the government.  Hopefully it
20   will go away.
21           If it doesn't go away, then we are going to need
22   discovery from various executives who will be able to speak
23   to this --
24           THE COURT:  What other discovery would you need?
25   What other category of discovery would you need other than
```

```
 1   the jurisdictional, assuming that you need it at all?
 2          MR. GETNICK:  With respect to the motion to
 3   dismiss, that would be the one --
 4          THE COURT:  With respect to the case.
 5          MR. GETNICK:  Well --
 6          THE COURT:  In other words, what I am hearing is
 7   that you want me to put this on a back burner until the
 8   middle of September to give you an opportunity to present me
 9   with a complaint that is not going to be objected to by
10   anybody and it will be the vehicle for litigating the case
11   if it has to be litigated.
12          Have I got it half right at least?
13          MR. GETNICK:  Yes.
14          THE COURT:  And so then the question is what do we
15   do in furtherance of that litigation track without just
16   sitting here for four months doing nothing?  Should I give
17   you a -- should I send out the Rule 26 order that I usually
18   send out?  Did I?
19          THE CLERK:  No.
20          THE COURT:  And then have a scheduling conference,
21   while you are working behind the scenes in the back stage
22   work on the complaint, we can go forward with some discovery
23   that is going to be necessary anyway in the case even if you
24   do resolve the jurisdictional problem.
25          MR. GETNICK:  I think the single --
```

```
 1              THE COURT:  Instead of wasting four months.
 2              MR. GETNICK:  I think the single best thing that we
 3    can do along those lines -- and we haven't been wasting time
 4    up until now and we won't waste time during these four
 5    months -- is that the defense has already turned over
 6    documentation to the government, some 170 boxes of
 7    documents.
 8              We don't need to make a very significant or
 9    elaborate discovery request because we don't need a
10    conference.  I can tell you right now what we need by way of
11    document discovery:  We need that 170 boxes of documents
12    officially turned over to the relator.
13              THE COURT:  That would be something you would do
14    under my Rule 26 order anyway.
15              So let me ask you the question, when can you turn
16    the documents over or are you not going to turn them over?
17              MR. HOBART:  No, Your Honor, we would be prepared
18    to do that.  It's really a matter of the mechanics of
19    getting it duplicated.  We can probably produce it on CDs as
20    we have been.  It would not be --
21              THE COURT:  When?  I hate to be quick but, I mean,
22    I like deadlines and deadlines met.
23              MR. HOBART:  Two or three weeks.  It wouldn't --
24              THE COURT:  Tell me what you want.  I mean, you
25    have to do it.
```

```
 1              I guess he has to do it, the way he is looking --
 2              (Laughter.)
 3              MR. HOBART:  Matt who does all the work just
 4   whispered in my ear and said ask for a month so I think a
 5   month is probably --
 6              THE COURT:  All right.  This is what, June 9th?
 7              THE CLERK:  June 9th.
 8              THE COURT:  July 9th everything will be turned
 9   over, okay.  No extensions to be granted.  And, you know,
10   all sorts of flames coming out of my nostrils if it is not
11   done by then.
12              That would be helpful to you in terms of ancillary
13   discovery, or maybe we should call it primary discovery in
14   the case.
15              MR. GETNICK:  Absolutely.
16              THE COURT:  All right.  So is that satisfactory,
17   July 9th getting all the papers?
18              MR. GETNICK:  It is, Your Honor.
19              THE COURT:  You don't have to turn them over all at
20   once.  If you have some, give them to him because he can
21   only read one piece of paper at a time.
22              MR. HOBART:  Right.  Your Honor, we also -- I will
23   talk to Mr. Getnick about this -- but we'll need to
24   negotiate an acceptable protective order for the Court to
25   sign but I don't anticipate any problems with that.
```

```
 1            THE COURT:  Oh, sure.  You can do that.
 2            MR. GETNICK:  We anticipate no problems with all of
 3   that.
 4            THE COURT:  Why don't you draft the one you want
 5   him to sign.  I think that is -- you have more of an
 6   interest than he does so if you draft it as bulletproof as
 7   you think you can make it and still be reasonable, then give
 8   it to him and maybe he can sign it.  All right.  We will let
 9   you do that.
10            MR. HOBART:  Fair enough.
11            THE COURT:  I don't want the delivery date delayed
12   because you haven't perfected the protective order.  Okay.
13            MR. HOBART:  That shouldn't be a problem.
14            THE COURT:  All right.
15            Now, so that means you can go ahead with some
16   independent discovery.
17            Now, I think what we probably should do is to bring
18   you back.  When were you coming back?  This is going to take
19   four months?  To the middle of September?
20            MR. GETNICK:  Yes.
21            THE COURT:  I think probably we should bring you
22   back shortly after the middle of September.  You will have
23   had an opportunity to deal with the paperwork that is going
24   to be presented to you so you ought to be in a pretty good
25   position.
```

1            You ought to have made great progress on crafting a
2    new complaint.  And then we will see where we are.
3            Give them a date to -- does that seem reasonable?
4    I will bring you back the middle of September.
5            **MR. GETNICK:**  It does, Your Honor.  The one thing I
6    know is that Mr. Hobart is not available during the week of
7    the 15th and we're not available during the week of the
8    22nd.  Can it be the week of the 29th?
9            **THE COURT:**  We will ask the boss.  What do you say
10   about that?
11           (Laughter.)
12           **THE CLERK:**  September 30th is a holiday, Rosh
13   Hashanah.
14           **MR. GETNICK:**  Oh.  Thank you for pointing that out
15   to me.
16           **THE CLERK:**  That is okay.
17           **THE COURT:**  We usually just point out the Italian
18   holidays.
19           (Laughter.)
20           **THE CLERK:**  How about October 1st, a Wednesday?
21           **MR. HOBART:**  That's fine.
22           **MR. GETNICK:**  It's actually a two-day holiday.
23           **THE CLERK:**  Oh, it is a two-day.
24           Does October 2nd work?
25           **MR. GETNICK:**  Yes.

```
 1              THE CLERK:  Is that okay?
 2              THE COURT:  Well, how much time do you think we
 3    will need for a conference, a further conference?
 4              MR. GETNICK:  I don't think more than a half an
 5    hour.
 6              THE COURT:  So maybe we can go back to before
 7    the --
 8              MR. GETNICK:  The problem was that those were weeks
 9    that either Geoff's firm is tied up or we're tied up.  I'm
10    literally out of the country the week before.
11              But October 2nd, which is the day after, is fine.
12              THE COURT:  All right.  Okay for everybody?
13              THE CLERK:  2:15.
14              THE COURT:  All right?
15              What else should we -- have we got everything taken
16    care of?  We will issue an order memorializing all this.
17              MR. GETNICK:  Very good.
18              THE COURT:  So it will be clear what you have to do
19    and when you have to do it.
20              Is there anything else that I should take up here?
21              MR. HOBART:  I don't believe so, Your Honor.
22              MR. GETNICK:  Thank you, Your Honor.
23              THE COURT:  Okay.  Thank you.  Bye bye.
24
25
```

```
 1          (WHEREUPON, the proceedings were recessed at 2:40
 2     p.m.)
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Case 1:04-cv-10375-JLT  Document 55  Filed 06/17/2008  Page 17 of 18  17

C E R T I F I C A T E

     I, Carol Lynn Scott, Official Court Reporter for the United States District Court for the District of Massachusetts, do hereby certify that the foregoing pages are a true and accurate transcription of my shorthand notes taken in the aforementioned matter to the best of my skill and ability.


     /S/CAROL LYNN SCOTT

_____

CAROL LYNN SCOTT
Official Court Reporter
John J. Moakley Courthouse
1 Courthouse Way, Suite 7204
Boston, Massachusetts 02210
(617) 330-1377